IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY PETRIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 4682 |
| v. | ) | |
| | ) | Magistrate Judge |
| CAROLYN W. COLVIN, | ) | Maria Valdez |
| acting commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeffrey Petrie ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied his claim for Social Security Disability Insurance Benefits and Supplemental Security Income. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the following reasons, the Court denies Plaintiff's Memorandum in Support of Summary Judgment, and grants the Commissioner's Motion for Summary Judgment, [Doc. No. 26].

---

[1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL AND FACTUAL HISTORY[2]

Plaintiff was involved in a motorcycle accident in 2007 and fractured his C7 vertebra. Despite having made a complete recovery, Plaintiff continued to suffer from allegedly disabling pain and functional limitations, which prevented him from working. Plaintiff thus filed for Disability Insurance Benefits and Supplemental Social Security Income, but his application was denied, both initially and upon reconsideration. Accordingly, Plaintiff requested and received two hearings before an Administrative Law Judge ("ALJ"), who found that Plaintiff was not disabled at Step Five of the Social Security Administration's sequential analysis.

At the first hearing, on February 8, 2010, Plaintiff and his wife testified that he was extremely limited in his daily activities due to constant pain, typically caused by performing simple motor movements. After reviewing Plaintiff's medical records, however, a medical expert, Dr. Miller, stated that he could not find a medically determinable impairment that would cause Plaintiff's alleged symptoms. Nonetheless, Dr. Miller further noted that Plaintiff's records indicated potential psychological or mental impairments, which Dr. Miller was admittedly unequipped to opine upon. Accordingly, ALJ ended the hearing and recommended that Plaintiff undergo a neuropsychological evaluation.

At the second hearing, held on June 17, 2010, Plaintiff testified that his condition had improved significantly (although some symptoms still persisted), and

---

[2] The following facts from the parties' submissions are undisputed unless otherwise noted.

produced records from his psychological evaluation. In that regard, the ALJ consulted with another medical expert, Dr. O'Brien, to discuss alleged mental impairments. After reviewing Plaintiff's records, Dr. O'Brien opined that Plaintiff suffered from mild mental impairments that would not significantly affect his ability to work. Based on that testimony and other evidence in the record, a vocational expert ("VE") found that Plaintiff could perform jobs that exist in significant numbers in the national economy at both the medium-unskilled and light-unskilled levels. However, Plaintiff's attorney objected to the VE's testimony, claiming that VE's methodology was unclear and therefore impossible to examine. As neither Plaintiff's counsel nor the VE were able to come to a mutual understanding, the ALJ ended the hearing and subsequently issued his opinion.

In that opinion, the ALJ found that Plaintiff suffered from a severe impairment (namely, a fractured C7 vertebra), but that he did not meet or equal any listed impairment. The ALJ then calculated Plaintiff's Residual Functional Capacity ("RFC") and determined that he could perform the full range of medium work. Next, rather than relying on the VE's testimony, the ALJ turned to the Medical Vocational Guidelines[3] ("the Grid") and determined that Plaintiff could perform jobs that exist in significant numbers in the national economy based on his RFC, age, high school education, and work experience. Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act.

---

[3] The Medical Vocational Guidelines provide that if a claimant can perform all or substantially all of the exertional demands at a given level, then a conclusion of "not disabled" is mandatory. *See* 20 C.F.R. 404, Subpt. P, Appx. 2.

# STANDARD OF REVIEW

## I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ conducts a five-step analysis and considers the following in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Under this standard, the ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). Rather, the ALJ must simply "build an accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, and minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

On appeal, a court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841. Thus, where conflicting evidence would allow reasonable minds to differ, the court must defer to the decision of the Commissioner. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

5

## DISCUSSION

On appeal, Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor based upon proper legal standards, asserting the following errors: (1) the ALJ improperly determined that Plaintiff's complaints of pain and functional limitations were not credible; (2) the ALJ ignored evidence that would dictate a lower RFC; and (3) the ALJ improperly used the Grid to determine that Plaintiff is not disabled. The Court addresses each issue in turn.

### A. <u>The ALJ's Credibility Determination</u>

To overturn an ALJ's credibility determination, a plaintiff must show that it was "patently wrong" and "lack[ing] in any explanation or support." *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). This is a very deferential standard, particularly because "a reviewing court lacks direct access to the witnesses, lacks the trier of fact's immersion in the case as a whole, and lacks the specialized tribunal's experience with the type of case under review." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004).

In that respect, Plaintiff first argues that the ALJ committed reversible error by: (1) improperly inferring that because Plaintiff could take care of his children during the day, his claims of disabling pain and functional limitations were therefore less credible; and (2) ignoring Plaintiff's statement that he needed assistance in caring for his children. Neither argument succeeds. While Plaintiff correctly notes that the Seventh Circuit cautions against equating household

activities with competitive employment, this is not what the ALJ did. Rather, the ALJ simply considered how Plaintiff's ability to care for his children reflected on his claims of constant disabling pain (e.g., his claim that he can shower only once a week due to constant pain), and concluded that they were inconsistent. (*See* R. 28.)

True, the ALJ did not explicitly consider Plaintiff's testimony that he needed assistance in caring for his children, but that omission was harmless. The crux of the ALJ's credibility determination was that Plaintiff failed to produce evidence of a medically determinable impairment that would give rise to his claims of disabling pain. Plaintiff's daily activities were merely one small piece of the puzzle to that end. Accordingly, the Court will not disturb the ALJ's findings in this regard. *See McKinzey v. Astrue*, 641 F.3d 885, 892 (7th Cir. 2011) (finding that an error is harmless if its correction would not warrant a different result on remand); *Herron v. Shalala* 19 F.3d 329, 333 (7th Cir. 1994) (explaining that a disability determination is five-step process that takes into account the totality of evidence and does not hinge on whether a claimant can or cannot perform daily activities).

Next, Plaintiff alleges that the ALJ committed reversible error by failing to explain how Plaintiff's testimony at the second hearing, where he stated that his condition had improved significantly, detracted from his credibility. However, ALJ's are not required to explicate every piece of evidence that figures into their credibility findings. *See Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) (explaining that an ALJ need only "minimally articulate" the basis of a credibility determination). Here, the ALJ indeed "minimally articulated" his reasons for

7

discrediting Plaintiff's claims of pain and functional limitations, (*see* R. 26-29), and therefore Plaintiff's argument fails.[4]

Nevertheless, Plaintiff contends that even if the ALJ properly found Plaintiff's claims of pain less credible in virtue of his testimony at the second hearing, "the ALJ should have issued a partially favorable decision finding [Plaintiff] disabled through the date if improvement." (Pl.'s Br. at 8.) This argument is unavailing. That Plaintiff indicated an improvement in his condition at the second hearing has no bearing on whether he was disabled at the first hearing. Like Plaintiff's daily activities, the ALJ simply found that Plaintiff's improvement was one of many pieces of evidence that helped "build the bridge . . . to the finding that [he] is not disabled." (R. 28.)

Beyond alleged errors in the ALJ's reasoning, Plaintiff further asserts that the ALJ violated SSR 96-7p by ignoring two crucial sources of evidence: (1) medical records that indicate Plaintiff suffered from severe pain and headaches; and (2) the credibility finding of a state agency reviewing physician, Dr. Mitra. Plaintiff is mistaken. With respect to the medical records, SSR 96-7p plainly states:

> No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.

---

[4] By the same token, Plaintiff's contention that the ALJ committed reversible error by failing to explain his findings with respect to a doctor's note from 2008, which indicated Plaintiff had only minimal complaints of neck pain, is also meritless.

SSR 96-7p. Here, the ALJ expressly considered Plaintiff's complaints of headaches and painful muscle spasms, but explained that they were entitled to little weight because no treating, consulting, or examining source had ever found that Plaintiff's symptoms resulted from a medically determinable impairment. (*See* R. 26-28.) Therefore, the ALJ was not obligated to bolster Plaintiff's credibility simply because the record is littered with his allegations of pain. *See Jones,* 623 F.3d at 1161 (explaining that an ALJ may properly rely on a paucity of evidence to discredit a claimant's account of her limitations).

With respect to Dr. Mitra, Plaintiff's argument is belied by the record. The ALJ expressly accepted Dr. Mitra's findings. (*See* R. 27.) However, Dr. Mitra's "finding" was that Plaintiff could perform a full range of medium work — not that Plaintiff was credible. (*See* R. 642-51; R. 27.) While Plaintiff makes much of Dr. Mitra's statement, contained in her report, that the "credibility of [Plaintiff's] symptom-related limitations are generally consistent with the medical evidence in file," the "symptoms" described in that report were muscle spasms and headaches. (R. 651.) Dr. Mitra's one-sentence endorsement of Plaintiff's credibility is thus not probative of the more-severe symptoms that Plaintiff alleged at the hearings. As such, Dr. Mitra's report adds to, rather than detracts from, the overwhelming lack of evidence supporting his claims of pain and functional limitations.

Ultimately, the Court is mindful that a lack of objective evidence is not by itself reason to find a claimant's testimony less credible, *see Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005), but Plaintiff has simply failed to show that the

9

ALJ was "patently unreasonable" in giving greater weight to the medical evidence, which failed to support Plaintiff's complaints of disabling pain, than he did Plaintiff's testimony. The Court therefore affirms the ALJ's credibility finding. *See Jones*, 623 F.3d at 1162.

B. **Dr. Miller's Testimony**

Next, Plaintiff asserts that the ALJ erred by ignoring the opinion of Dr. Miller, who opined that Plaintiff should be limited to light work. Although the ALJ did not explicitly consider Dr. Miller's finding in this regard, it was a harmless error because the ALJ's finding was otherwise supported by substantial evidence: the opinions of Dr. Mitra, a review physician, and the opinions of Plaintiff's treating physician, neurologist, neurosurgeon, and orthopedist, all of which support the conclusion that Plaintiff can perform the full range of medium work. (*See* R. 27; *see also* R. 645-51, 654, 657, 670.) Plaintiff's contentions are thus insufficient to warrant a remand.

C. **The ALJ's RFC Calculation and Use of the Grid**

Lastly, Plaintiff challenges the ALJ's RFC calculation and use of the Grid to conclude that Plaintiff is not disabled. Specifically, Plaintiff claims the ALJ, in finding that Plaintiff could perform a full range of medium work, failed to analyze properly the opinions of Dr. O'Brien (a medical-psychological expert) and Dr. Rest (Plaintiff's treating psychologist), which indicate that Plaintiff suffers from nonexertional (mental) limitations that were unaccounted for the RFC. Similarly, Plaintiff further claims the ALJ erred by consulting the Grid rather than a VE,

because, according to Plaintiff, the Grid should be used only if a claimant suffers from purely exertional limitations. Again, Plaintiff is mistaken.

The existence of a nonexertional impairment, such as a severe mental impairment, *may* preclude application of the Grid. *Nelson v. Secretary of HHS*, 770 F.2d 682, 684 (7th Cir. 1985). However, that a claimant suffers from a nonexertional impairment does not necessarily preclude using the Grid. *Id.* at 685. Rather, the Grid should be avoided only if the ALJ determines that a claimant's nonexertional limitations or mental impairments are "severe enough to restrict a full range of gainful employment at the designated level." *Id.* (citation omitted). Importantly, this determination is a determination of fact, and the Court will thus uphold the ALJ's determination if there is substantial evidence to "persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available. *Warmoth v. Bowen*, 798 F.2d 1109, 1112 (7th Cir. 1986).

Accordingly, the issue is whether there exists medical evidence that would undercut the ALJ's finding that Plaintiff's mental impairments were not significant enough to preclude using the Grid. The Court finds no such evidence in either Dr. O'Brien's or Dr. Rest's reports.

*1. Dr. O'Brien*

At the hearing, Dr. O'Brien found that Plaintiff had only mild limitations in social interaction, no limitations in maintaining concentration, persistence, or pace, and no limitations in understanding, remembering, and carrying out simple

instructions. (R. 861-62.) However, Dr. O'Brien's testimony was based on her prior interrogatory responses, one of which noted that Plaintiff had difficulty with following complex instructions. In his opinion, the ALJ relied heavily on Dr. O'Brien's testimony in finding that Plaintiff did not suffer from a significant mental impairment (which would preclude the use of the Grid), but ignored her observation that Plaintiff had difficulty with complex instructions. Plaintiff believes this is cause for remand, but it was merely harmless error.

Simply put, Plaintiff's difficulty with following complex instructions does not preclude application of the Grid. *See* 20 C.F.R. § 404.1521 (explaining that a mental impairment is not "severe" unless it affects a claimant's ability to carry out *simple* instructions). Thus, even if the ALJ modified the RFC to account Plaintiff's mental impairments, those impairments would not qualify as "severe," and therefore the ALJ would still have applied the Grid and concluded that Plaintiff was not disabled. Furthermore, the gravamen of Dr. O'Brien's testimony supports the conclusion that Plaintiff's suffered from only mild mental impairments.[5] One interrogatory response to the contrary is hardly a basis for remanding this case.

### 2. *Dr. Rest*

Plaintiff's treating psychologist, Dr. Rest, opined that Plaintiff was moderately limited in social functioning, understanding, and memory, that he suffered from frequent deficiencies in concentration, persistence, and pace, and that

---

[5] This conclusion is further buttressed by Dr. Peggau, a consultative psychologist, who conducted a litany of psychological tests on Plaintiff and concluded that he was not significantly limited by any mental impairment. (*See* R. 841-47.)

12

he had a poor ability to maintain regular attendance and be punctual. Thus, Dr. Rest ultimately concluded that Plaintiff would become easily overwhelmed and that even the most basic work would be difficult for him. On appeal, Plaintiff asserts that the ALJ violated the "treating physician rule" by rejecting Dr. Rest's opinion without sufficient explanation. The Court, however, finds no support for this argument in the record.

The treating physician rule requires that ALJs give controlling weight to a treating physician's opinion if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527. The rule further provides that if the ALJ does not give the treating physician's opinion controlling weight, then he must weigh that opinion in light of the following factors:

1) the length of the treatment relationship and frequency of examination
2) the nature and extent of the treatment relationship
3) the amount/qualify of evidence support the physician's opinion
4) the consistency of the physician's opinion with the record as a whole
5) the physician's expertise in area on which she opines
6) other factors brought to the Commissioner's attention

20 C.F.R. § 404.1527(c)(1)-(6); *accord Campbell*, 627 F.3d at 308. Here, the ALJ explicitly considered, and then rejected, Dr. Rest's opinion on the basis that he was not, in fact, a "treating physician," since Plaintiff failed to produce any records showing that Dr. Rest had a more-than-cursory treatment relationship with Plaintiff. Indeed, Plaintiff's only submission in that regard was a statement (rather than treating notes) from Dr. Rest indicating that he saw Plaintiff only *once* at the behest of Plaintiff's attorney. (*See* R. 877.) Moreover, the ALJ further discounted Dr.

13

Rest's report as inconsistent with the medical evidence in the record. The ALJ's explanation is thus sufficient to satisfy the treating physician rule. *See Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (explaining that an ALJ need only "minimally articulate" his reasons for discrediting a treating source rather than articulate *every* factor in 20 C.F.R. § 404.1527).[6]

In the end, Plaintiff has failed to show that the ALJ's use of the Grid was improper, and the Court therefore affirms the ALJ's finding that Plaintiff is not disabled. *See Clark v. Sullivan*, 891 F.2d 175, 179 (7th Cir. 1989) ("If the use of the grid is appropriate, the Secretary may rely upon it in determining disability. In such a case, the grid alone constitutes substantial evidence sufficient to uphold the decision of the Secretary.")

---

[6] The Court notes that even if the ALJ erred in discrediting Dr. Rest's report, it would have been harmless error because that report supports a finding that Plaintiff suffers from — at most — *moderate* mental impairments. (*See* R. 802; 20 C.F.R. § 404.1521.). And, as explained above, a finding that Plaintiff suffered from moderate mental impairments would not have undermined the ALJ's use of the Grid.

## CONCLUSION

For the reasons set forth above, the Court denies Plaintiff's Memorandum in Support of Summary Judgment, and grants the Commissioner's Motion for Summary Judgment, [Doc. No. 26].


**SO ORDERED.**                **ENTERED:**


**DATE:  December 18, 2014**        _____
                  **HON. MARIA VALDEZ**
                  **United States Magistrate Judge**